IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

MICHAEL SCHOENE and
PATRICIA SCHOENE,

        Plaintiffs,

v.                                  Civil Action No. 5:13-CV-95
                                         (BAILEY)

MCELROY COAL COMPANY and
CONSOL ENERGY INC.,

        Defendants.

## MEMORANDUM ORDER AND OPINION DENYING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Currently pending before this Court is Defendants' Motion for Summary Judgment [Doc. 37], filed by McElroy Coal Company ("McElroy") and CONSOL Energy Company, Inc. ("CONSOL") on December 1, 2015. Plaintiffs filed a response to the Motion on December 23, 2015 [Doc. 39]. Defendants filed their reply on December 30, 2015 [Doc. 40]. Having been fully briefed, this matter is now ripe for decision. For the reasons set forth below, this Court will deny McElroy and CONSOL's Motion for Summary Judgment.

## I. BACKGROUND

This case arises from an action originally filed in the Circuit Court of Marshall County, West Virginia, on June 26, 2013 [Doc. 1-1]. Defendants timely removed the case to this Court under federal diversity jurisdiction, 28 U.S.C. § 1332, on July 30, 2013 [Doc. 1]. On August 6, 2013, defendants collectively filed a Motion to Dismiss [Doc. 8], which this Court denied by Order dated August 8, 2013 [Doc. 9]. Plaintiffs then filed a Motion to Remand [Doc. 10] on August 20, 2013, which this Court also denied on September 12,

2013 [Doc. 17].

Plaintiffs subsequently filed an Amended Complaint [Doc. 24] on January 16, 2014. In the Amended Complaint, plaintiffs note that they own a home and 55 ½ acres of property situated in Liberty District, Marshall County, West Virginia, while defendants lease the coal interests under the same [Id. at ¶¶ 5-7]. Defendants' mining operations under plaintiffs' property have allegedly caused and are continuing to cause subsidence damage to plaintiffs' real and personal property [Id. at ¶ 9]. Notably, defendants have purportedly utilized the "longwall mining" technique to extract coal from plaintiffs' property [Id. at ¶ 8]. Plaintiffs now seek recourse under three theories of liability: (1) a common law claim for "Support of the Surface Estate"; (2) a statutory action brought pursuant to the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"), W.Va. Code §§ 22-3-25(f) and 22-3-25(c), and W.Va. C.S.R. §§ 38-2-16.1.a and 28-2-16.2.c.1; and (3) an additional statutory action brought pursuant to the Federal Surface Mining Control and Reclamation Act ("SMCRA"),[1] 30 U.S.C. §§ 1270(f), 1270(a), and 1309(a)(1), and provisions of 30 C.F.R. § 817.121 [Id. at ¶¶ 11-40]. Plaintiffs claim a number of property-based damages resulting from the subsidence, including damage to the surface, damage to and depletion of natural water springs, a pond, and several wells located on the property, damage to the physical structures located on the property, loss of use, and loss of property value [Id. at ¶¶ 42-45]. Plaintiffs also allege damages related to their private use and enjoyment of the property, including taking of coal interests, emotional and mental anguish, stress, and anxiety [Id. at ¶¶ 46-49]. Finally, plaintiffs argue that defendants' mining activities are so

---

[1] The First Amended Complaint incorrectly designates Count III as "Federal Surface Coal Mining Reclamation Act."

outrageous that they are entitled to recover punitive damages [Id. at ¶ 51].

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." **Temkin v. Frederick County Comm'rs**, 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992) (citing **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in **Anderson**, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see also* **Charbonnages de France v. Smith**, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the

3

law." (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950)). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

### III. DISCUSSION:

A.  There is a Genuine Issue of Material Fact as to Whether Plaintiffs Have Viable Claims against CONSOL.

This Court will first address defendants' arguments that CONSOL is not properly a party to this action. The defendants contend that plaintiffs' claims against CONSOL should be dismissed entirely, as that entity has never been the owner or operator of the mine at the center of this action [Doc. 38 at 1]. Instead, defendants argue that because, "McElroy was the entity which conducted the coal mining operations under the subject property and not CONSOL," CONSOL should be dismissed from this action [Id. at 4].[2] In support of that

---

[2] This Court notes that aside from the very last sentence, defendants do not re-address this issue in their Reply in Support of Motion for Summary Judgment [Doc. 40 at 8].

4

argument, defendants argue that McElroy was the operator,[3] permit holder,[4] and the only "entity which conducted the coal mining operations under the subject property, and not CONSOL" [Id. at 13; citing Doc. 25 at ¶¶ 4 and 8].

Initially, it is necessary for this Court to examine the deeds at issue to this litigation. Defendants note that, "[t]here is no dispute plaintiffs own the subject surface property . . . [and] that plaintiffs' chain of title contains a deed issued to one of defendants' predecessors in interest, dated October 23, 1902, between Lindsey Stricklin, grantor, and George L. Hibbs, grantee" (hereinafter referred to as "the 1902 deed") [Id. at 3]. That deed severed the coal rights from the surface estate, and included a waiver of surface support (this Court will address the waiver issue below) [Doc. 37-1]. On August 31, 1966, the coal rights referenced above were transferred from Southern Reserve Coal Co. to Consolidation Coal Company (hereinafter referred to as "Consolidation") [Doc. 37-2].

In addition to CONSOL's ownership of the coal, the plaintiffs have produced evidence of the involvement of CONSOL in the mining operation. As an example of this involvement, plaintiffs cite pre-mining inspection documents which include references to CONSOL and feature a CONSOL Energy letterhead [Id.; citing Doc. 39-3, Letter from Jayson Johnson, Land Agent for CONSOL Energy, authorizing RDJ Consulting, LLC, as the survey crew for submittal of pre-subsidence regulation]. Plaintiffs have submitted an insurance policy relevant to this litigation that references CONSOL as the custodian of

---

[3] Defendants note that, "Operator means any person who is granted or who should obtain a permit to engage in any activity covered by [the WVSCMRA], or anyone who engages in surface mining and/or surface mining and reclamation operations." WVSCMRA § 38-2-2.82.

[4] Permit holder being referenced at 30 C.F.R. § 817.121(c)(2).

5

McElroy Coal Company [Doc. 39-4]. Finally, plaintiffs also proffered a "Post-Subsidence Evaluation" report, dated August 20, 2012 [Doc. 39-1]. This evaluation, which was purportedly conducted on the Schoene property, is directed to a non-party to this lawsuit, Mr. Jamie Kuffner, who is listed as a CONSOL employee [Id.]. The report also notes that another CONSOL employee, Ms. Krissy Hundertmark, was also present for the evaluation [Id.]. This evidence clearly demonstrates that CONSOL had at least some involvement with the mining activity at issue in this litigation. When viewing this evidence before this Court in a light most favorable to the non-moving party, it is clear that plaintiffs have presented a genuine issue of material fact as to whether CONSOL should be held liable for plaintiffs' alleged harms. *See **Matsushita Elec. Indus. Co.**,* 475 U.S. at 587.

Even the 1902 deed and the 1966 conveyance, which defendants attached to their summary judgment motion, each feature bold letter labels reading, "Schoene-CONSOL 0469" and "Schoene-CONSOL 0455" affixed to the lower right hand corners. As such, given the clear weight of the evidence present before this Court, it is clear that this Court must deny defendants' Motion for Summary Judgement as to whether CONSOL is a proper defendant to this action.

B.  Summary Judgment is Denied as to Plaintiffs' Common Law Claims for Support of the Surface Estate.

This Court will next address defendants' argument that plaintiffs' Count I fails as a matter of law, because plaintiffs' predecessors-in-interest expressly waived the right of support and the right to recover any common law damages resulting from a loss of support. Defendants premise this argument upon a clause within the 1902 deed which purportedly

waives the right to surface support [Doc. 38 at 3]. That clause provides:

> "Together with all the rights and privileges necessary and useful in the mining and removing of the said coal, including the right of mining the same without leaving any support for the overlying stratas and without liability for any injury which may result to the surface from the breaking of said strata. . ."

[Doc. 37-1 at 2]. Plaintiffs, for their part, do not dispute this waiver [Doc. 39 at 2].[5]

This Court begins with the principle that a landowner who conveys the mineral rights underlying the estate generally retains an "absolute right to subjacent support for the surface in its natural state." Syl. Pt. 1, ***Winnings v. Wilpen Coal Co.***, 134 W.Va. 387, 59 S.E.2d 655, 656 (1950). However, as the parties correctly note, West Virginia case law permits landowners who lease their mineral rights to waive the right of subjacent support, "provided that the language of the deed and the circumstances surrounding the conveyance show a clear intention by the surface owner to waive such support." ***Antco, Inc. v. Dodge Fuel Corp.***, 209 W.Va. 644, 550 S.E.2d 622, 629 (2001); citing Syllabus, ***Rose v. Oneida Coal Co., Inc.***, 180 W.Va. 182, 375 S.E.2d 814, 815 (1988). As such, a lessor of mineral rights, such as the Schoenes' predecessor-in-interest, Lindsey Stricklin, can waive the right to subjacent support.

In West Virginia, a deed will be interpreted and construed as of the date of its execution. ***Energy Development Corp. v. Moss***, 214 W.Va. 577, 586, 591 S.E.2d 135, 144 (2004), citing Syl. pt. 2, ***Oresta v. Romano Bros.***, 137 W.Va. 633, 73 S.E.2d 622 (1952) and ***Quintain v. Columbia Nat'l. Res.***, 210 W.Va. 128, 556 S.E.2d 95 (2001). Also in accord are ***Faith United Methodist Church v. Morgan***, 231 W.Va. 423, 429, 745

---

[5] While the parties are free to stipulate facts, this Court does not believe that the parties can stipulate to legal principles which the Court believes to be erroneous. This Court will not apply law which it believes to be improper.

7

S.E.2d 461, 467 n. 11 (2013), *Cogar v. Sommerville*, 180 W.Va. 714, 379 S.E.2d 764 (1989) and *Brown v. Crozer Coal & Land Co.*, 144 W.Va. 296, 107 S.E.2d 777 (1959).

In addition, mineral leases are to be liberally construed in favor of the lessor and strictly against the lessee. *Energy Development Corp. v. Moss*, 214 W.Va. 577, 586, 591 S.E.2d 135, 144 (2004), citing *Martin v. Consolidated Coal Co.*, 101 W.Va. 721, 133 S.E. 626 (1926).

Yet waivers of subjacent support are limited, and are "only valid insofar as the proposed activity was within the contemplation of the original parties," to the conveyance. *Id.*; *citing* Syl. pt. 3, *Cogar v. Sommerville*, 180 W.Va. 714, 379 S.E.2d 764 (1989).

In *Cogar*, the West Virginia Supreme Court stated:

[A] severance deed is to be construed in light of the conditions and reasonable expectations of the parties at the time it is made. As a consequence, mining methods not contemplated at the time of the severance deed may not be utilized. See *Brown v. Crozer Coal & Land Co.*, 144 W.Va. 296, 107 S.E.2d 777 (1959) (auger mining); *West Virginia-Pittsburgh Coal Co. v. Strong*, 129 W.Va. 832, 42 S.E.2d 46 (1947) (strip mining). It would be impossible to conceive that the parties to old severance deeds would have any contemplation of waiving future statutory rights.

Furthermore, in Syllabus Point 1, in part, of *Winnings v. Wilpen Coal Co.*, 134 W.Va. 387, 59 S.E.2d 655 (1950), we held that a coal severance deed containing broad mining rights would not be construed to waive the right of subjacent support "unless [the surface owner's] intention so to do

clearly appears from express language or by necessary implication." It is doubtful that the waiver in the Howard deed, see note 3, *supra,* is sufficiently specific to constitute a waiver of surface supports under ***Winnings,*** but this is a point we need not decide. It is sufficient to state that under ***Winnings,*** waivers of this nature are strictly construed. Accordingly, we cannot imply a waiver of this statutory right.

Finally, our conclusion is in accord with the general principle that a release or waiver of liability or damages covers only those items that are within the ordinary contemplation of the parties. As we stated in Syllabus Point 2 of ***Conley v. Hill***, 115 W.Va. 175, 174 S.E. 883 (1934), *overruled on other grounds,* ***Thornton v. Charleston Area Medical Center,*** 158 W.Va. 504, 213 S.E.2d 102 (1975):

> "A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution."

See also Syllabus Point 2, ***Cassella v. Weirton Constr. Co.,*** 161 W.Va. 317, 241 S.E.2d 924 (1978).

***Cogar v. Sommerville***, 180 W. Va. 714, 719-20, 379 S.E.2d 764, 769-70 (1989)(Footnote omitted).

In order to be within the contemplation of the parties, it must be shown that the mining takes place by mining methods that were contemplated by the parties at the time of the severance. ***Cogar***, 379 S.E.2d at 719; *see also* ***Brown v. Crozer Coal & Land Co.,***

9

144 W.Va. 296, 107 S.E.2d 777 (1959) (holding that because auger mining was unused and unaccepted as common practice in Wyoming County around 1900, a deed did not give owners of mineral rights to use that method to extract coal); *West Virginia-Pittsburgh Coal Co. v. Strong*, 129 W.Va. 832, 42 S.E.2d 46 (1947) (holding that a 1904 mineral-rights conveyance in Brooke County did not encompass strip mining) ("To now contend that in 1904 the practice of strip mining was known in this State to the extent that it was necessarily within the implied contemplation of the parties to a private contract, we believe to be untenable.").

Here, the record makes it clear that CONSOL longwall mined coal on plaintiffs' property [Doc. 39-2 at 1, noting that "Longwall mining was conducted under the surface property in 2012."]. It is clear that mechanized longwall mining was not the type of mining contemplated by the parties to the 1902 deed. As noted by Professor McGinley, "[b]ecause the longwall mining method in the United States is a relatively new and quite different method of mining than that known and contemplated in mineral severance instruments executed prior to the 1970's and because it involves one hundred percent coal extraction and intentionally planned subsidence, legal impediments to its use may arise." McGinley, *Proceedings of the Eastern Mineral Law Foundation Fifth Annual Institute*, Ch. 5, p. 5-2 (1984).

First, it may be helpful to highlight the distinction between longwall mining and the older method of mining, room and pillar mining. With longwall mining, "extraction takes place across a long 'face' or 'wall' which is blocked out between two panel entries which contain at least three parallel entries. . . .. The recent technological advances which developed powered self-advancing roof support systems revolutionized longwall mining.

The new roof support devices have the strength to hold the mine top secure keeping the face open and preventing roof falls in the face zone. While the powered self-advancing roof support is holding up the mine top above the working area where the coal is being removed, the roof immediately behind the support line is allowed to break and cave." *Id*. at 5, p. 5-5.

"Because of virtually complete extraction of coal with overlying rock caving into the mining void, there is resulting subsidence of overlying strata and of the surface which, unlike room and pillar mining, is relatively quick and more predictable as to timing." *Id*.

On the other hand, "the room and pillar mining method derives its name from the driving of openings into coal seams to divide the coal into blocks; these blocks or 'pillars' are solid coal left *in situ* to support the overlying strata." *Id*.[6]

Several authoritative sources indicate that modern, mechanized longwall mining, like the type at issue here, could not have possibly been contemplated by the parties to the 1902 deed at issue. "For more than a hundred years, from before the Civil War to well into the 1930s, the production of coal depended on the simple act of taking shovel in hand, scooping up a pile of the material and throwing it into an empty mine car." J. Thomas Lane, *Fire in the Hole to Longwall Shears: Old Law Applied to New Technology and other Longwall Mining Issues*, 96 W.Va. L.Rev. 577, fn. 2 (1994). As Mr. Lane further muses, miners from 1900, industry professionals, no less, "would be ecstatic to behold the chain saw undercutting machines and air drills of the 1920s and '30s. He would marvel at the

---

[6] The article also notes that in some places the pillars are removed. In the area of Marshall County, at the time the waiver was executed, no pillars were extracted but were rather left in place. West Virginia University College of Engineering Bulletin, May, 1929, p. 203.

11

mining machines of the 1940s and '50s, and he would be lucky to have a job working the continuous miners of the 1960s. **Longwall shears and hydraulic shields of the 1980s and '90s – beyond comprehension (emphasis added)."** *Id.* at 580.

As a video posted on CONSOL Energy's website, entitled "Longwall" describes:

> "As transforming as the 1950s and 1960s were, the 1970s were as turbulent for the energy industry. It was a time when America became familiar with new terminology . . . **The American coal industry also became familiar with a new term: the longwall** (Emphasis added). Though it had been around in Germany in various forms since the early 1900s, longwall mining in the form most familiar today got its start in the early 1970s."

CONSOL Energy, Our History: Longwall (January 11, 2016), http://www.consolenergy.com/about-us/our-history.aspx.

In the West Virginia University College of Engineering Bulletin entitled Mining Methods in West Virginia, dated May, 1929, it was noted that "[t]he character of the roof in the Panhandle Field[7] is such that modified longwalling is rendered impracticable in the region below Buffalo Creek[8]. Only one plan has ever been used in this field, and it was abandoned after a short time." West Virginia University College of Engineering Bulletin, May, 1929, p. 208.

In addition, the West Virginia Geological Survey for Marshall, Wetzel and Tyler Counties in 1909 states that the longwall system of mining does not work in those counties "on account of the roof not giving. The limestone above is not springy but breaks all at

---

[7] The Panhandle Field of West Virginia includes the counties of Hancock, Brooke, Ohio and Marshall. West Virginia University College of Engineering Bulletin, May, 1929, p. 203.

[8] Buffalo Creek is in Brooke County and empties into the Ohio River at Wellsburg, West Virginia. Marshall County is below Buffalo Creek. West Virginia University College of Engineering Bulletin, May, 1929, p. 203.

12

once. In the pillar and room system, one third of the mining section is left in as pillars to support the roof . . . ."

This Court holds that the broad form waiver of subjacent support is not a valid waiver against the subsidence damage caused by longwall mining. Longwall mining was unknown in Marshall County and to the lessors at the time the instrument was executed. Longwall mining provides almost a certainty of significant subsidence and the loss of all natural water sources. On the other hand, room and pillar mining, that known in 1902, carries with it only the possibility of subsidence and not commonly the loss of water resources.[9]

This Court's decision is in agreement with the decision of the Appellate Court of Illinois in *Phillips v. Old Ben Coal Co.*, 1991 WL 4720 (January 18, 1991).[10] In that case the Court held:

> Finally, we address the question of Old Ben's alleged violations of the common law duty to provide subjacent support. Old Ben maintains that the waiver contained in the 1912 coal deed absolves it of any duty to provide subjacent support and relieves it of any duty to prevent subsidence or compensate the surface owner for damage caused by subsidence.
>
> . . .

---

[9] This Court is not suggesting that the invalidity of the waiver prevents the mining of the coal. The Lessors clearly intended for the coal to be removed. This holding is limited to a ruling that the coal producer must pay the landowner for all of the damage caused by the mining operations.

[10] This Court is well aware that the decision in this case was vacated and can speculate as to the reason. Nevertheless, this Court agrees with the analysis in Judge Rarick's opinion.

13

The question of whether declaratory or injunctive relief should have issued in this case, therefore, must be examined in the narrow context of whether the waiver in the coal deed waives the common law duty imposed on longwall miners to prevent subsidence. While this duty may be waived by the surface owner, we conclude that the waiver in this case does not do so. The deed containing the waiver was executed in 1912, long before the advent of longwall mining. When the mineral estate was purchased, the grantee presumably paid more for the inclusion of the waiver and the grantor received more in exchange for assuming the *risk* of subsidence of the surface state. To extend the waiver contained in the deed to longwall mining methods, which entails the *certainty* of subsidence, would be imposing upon the grantor of the waiver a far greater burden than he originally bargained for. (Beck, *Illinois Coal Mine Subsidence Law Updated* (1985), S.Ill.U.L.J. 428.) While the common law duty to prevent subsidence damage may be waived in the case of longwall mining operations, such waiver must clearly and unequivocally demonstrate that the definite and certain subsidence is contemplated by the parties. It is appropriate that such clear and unequivocal demonstration of intent be required given the certainty of both the subsidence damage and resulting loss which the surface owner will suffer.

*Phillips v. Old Ben Coal Co.*, No. 5-89-0127, 1991 WL 4720, at *4 (Ill. App. Ct. Jan. 18, 1991), opinion vacated, appeal dismissed (Apr. 1, 1991) (emhasis in original).

This Court does not find itself bound by *Schultz v. Consolidation Coal Co.*, 197 W.Va. 375, 475 S.E.2d 467 (1996) *cert. denied*, 519 U.S. 1091 (1997). In that case, another Marshall County couple filed suit against CONSOL for subsidence damages to their home and property after CONSOL mined for coal on that property. *Id.* at 469. CONSOL argued that an identical 1905 lease provision to the one at issue here absolved them of all liability for subsidence damage. *Id.* at 469, 477. Somewhat baffling, the plaintiffs there merely contended that the SMCRA and WVSCMRA rendered the waiver void, and neglected to even mention the *Cogar* line of cases. *Id.* at 477. After the Circuit Court of Marshall County granted CONSOL summary judgment on this issue, among others, the matter was appealed to the West Virginia Supreme Court. *Id.* at 468. In upholding summary judgment for CONSOL on the waiver issue, the Supreme Court held that the, "SMCRA and the WVSCMRA had not pre-empted this state's common law," and held that CONSOL did not mis-represent to the Schultz family that there was a valid waiver in place. *Id.* As noted by the West Virginia Supreme Court in *Antco v. Dodge Fuel Corp.*, 209 W.Va. 644, 653, 550 S.E.2d 622, 631 (2001), [i]n *Schultz*, the plaintiffs "argued that a mining company was liable to them for damages to their surface structures because of changes in federal law."

This Court also finds the case of *Rose v. Oneida Coal Co., Inc.*, 180 W.Va. 182, 375 S.E.2d 814 (1988), to be distinguishable as that case was decided before *Cogar*. In *Rose*, the plaintiffs alleged that the coal company had willfully, negligently, and wantonly caused their water supply to disappear and their land to subside. 180 W.Va. at 183, 375 S.E.2d at 815. The lower court granted summary judgment in favor of the coal company,

15

finding that the waiver of liability in a 1915 severance deed was enforceable against the plaintiffs. *Id.* On appeal, the plaintiffs argued that the waiver of liability in the severance deed was contrary to public policy. 180 W.Va at 184, 375 S.E.2d at 816. After acknowledging West Virginia's established rule of upholding contractual waivers of liability for damages from subsidence, the *Rose* Court found the 1915 waiver to be enforceable. *Id.* However, like *Schultz*, the *Rose* Court also neglected to consider or mention the "reasonable expectations of the parties" at the time of the conveyance, likely because this case was decided several months before *Cogar*. Furthermore, there is no indication in the decision that the method of mining used was the longwall method.

This Court finds this Court's decision in ***Smerdell v. Consolidation Coal Co.***, 806 F.Supp. 1278 (1992), to be distinguishabe for the same reason as *Schultz*. In *Smerdell*, the plaintiffs argued that the Surface Mining Control and Reclamation Act preempted the common law.

Finally, defendants seek summary judgment on what they characterize as "scattershot legal theories" and claimed damages, including annoyance, inconvenience, taking of coal interests, emotional and mental anguish, stress, and anxiety, as they are waived by the waiver of subjacent support. In light of this Court's ruling above, summary judgment is denied.

## IV. CONCLUSION

For the reasons stated above, this Court hereby **DENIES** Defendants' Motion for Summary Judgment [Doc. 37].

It is so **ORDERED**.

16

The Clerk of Court is directed to transmit copies of this Order to all counsel of record.

**DATED**: January 29, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE